David M. HATFIELD, et al., Plaintiffs,

v.

OAK HILL BANKS, et al., Defendants.

No. C2–99–835.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 4, 2000.

Kimberly M. Skaggs, Equal Justice Foundation, Columbus, OH, Gary Michael Smith, Equal Justice Foundation, Dover, OH, for Plaintiffs.

Donald A. Cox, Jackson, OH, Bruce A. Curry, Jennifer K. Mason, Baran Piper Tarkowsky Fitzgerald & Theis, Worthington, OH, for Defendants.

### OPINION AND ORDER DISMISSING PLAINTIFFS' PURPORTED CLASS ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

MARBLEY, District Judge.

This matter is before the Court on Plaintiffs' Amended Motion For Class Certification, filed pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). Plaintiffs seek to certify a plaintiff class comprised of "all persons who have or will contract to purchase a manufactured house from Elsea, Inc. for use as a personal residence at any time on or after September 1, 1997." The claims for which Plaintiffs' purported class would seek relief all arise under the Ohio Consumer Sales Practices Act, OHIO REV.CODE § 1345.01 ("OCSPA"), and state contract law. This Court has federal question subject matter jurisdiction over Plaintiffs' individual claims asserted under the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 ("Magnuson–Moss"). Plaintiffs do not seek to certify a class under Magnuson–Moss. Plaintiffs assert subject matter jurisdiction in this Court for their state law-based class action by appending it, pursuant to 28 U.S.C. § 1367, to their individual Magnuson–Moss claims. Defendants argue that allowing Plaintiffs to proceed in this manner would effectuate an end run around Magnuson–Moss and thus violate 28 U.S.C. § 1367(a). For the following reasons, Plaintiffs' purported class action is **DISMISSED** for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(h)(3).[1]

## I. INTRODUCTION

This case presents the Court with an issue of first impression: Can plaintiffs, properly in federal court as individuals under Magnuson–Moss, rely solely on 28 U.S.C. § 1367 to support a class action asserting exclusively state claims? Because Magnuson–Moss provides an express jurisdictional bar—which Plaintiffs cannot clear—to the maintenance of a class action, and because § 1367(a) provides for supplemental jurisdiction only when not "expressly provided otherwise by Federal statute," this Court holds that it does not have subject matter jurisdiction to hear Plaintiffs' purported class action claims. Furthermore, even if it were within the Court's discretion to hear Plaintiffs' purported class action claims, it would decline to do so in accordance with 28 U.S.C. § 1367(c)(4).

## II. BACKGROUND

As the Court is currently viewing this matter through a Rule 12 lens, it accepts as true the factual assertions made by Plaintiffs. *Cf. Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### A. Facts Relating to Plaintiffs' Individual Claims

On July 28, 1998, Plaintiffs, a married couple, agreed to purchase a new manufactured home from Defendant Elsea, Inc. Elsea, Inc. referred Plaintiffs to Defendant Mid–Ohio Financial Services ("Mid–Ohio"),

---

1. Because this Court agrees with Defendants' reading of Magnuson–Moss and § 1367, it does not reach the merits of Plaintiffs' Amended Motion For Class Certification.

which acted as mortgage broker in the transaction. Defendant Oak Hill Banks ("Oak Hill") held Plaintiffs' consumer credit contract. Mid–Ohio brokered a variable rate, non-amortizing nine-month "construction loan" with Oak Hill to finance Plaintiffs' purchase of the manufactured home and lot. On September 17 1998, Plaintiffs received disclosures and a settlement statement providing the terms of the loan.

On November 10, 1998, Plaintiffs signed the final purchase agreement, a "Land/ Home Installment Agreement" and a "New Home Setup and Delivery Agreement" with Elsea, Inc. Shortly thereafter, Elsea, Inc. notified Plaintiffs that their new home would soon be delivered from the manufacturer in Indiana. Plaintiffs were at this time living in an older mobile home on the same lot as their new home was to be installed. At the request of Elsea, Inc., Plaintiffs had the older home removed in preparation for installation of their new home. During this time, Plaintiffs took up temporary residence with friends.

Installation of the new home did not occur on the date scheduled. After a delay of thirty days, the home was sitting in two halves on Plaintiffs' lot, still mounted on wheels and axles. Elsea, Inc. conceded it was not able to complete the job in a timely fashion. Plaintiffs then informed Defendant Asa Elsea of the delay and requested his assistance in completing the installation. Mr. Elsea was unresponsive to Plaintiffs' request. The purchaser of Plaintiffs' former home allowed Plaintiffs to move the home back onto their lot and to live in it during the delay. Plaintiffs stayed in their old home until installation was completed.

Upon installation, the home did not conform to the contract between Plaintiffs and Elsea, Inc. Moreover, Elsea, Inc.'s workmanship in installing the home and preparing it for occupancy was of "poor quality, shoddy, and negligent." On or about December 25, 1998, Plaintiffs informed Elsea, Inc. of numerous problems with the installation of the home. Specifically, Plaintiffs complained of the following defects: cap shingles that were not installed properly at the roof peak; a number of inoperable electrical outlets and telephone jacks in the home; missing trim pieces from a number of locations inside the home; Elsea, Inc.'s failure to install gutters and down spouts; high voltage lines from the main electrical feed spliced to the home's wiring and left unprotected on a water-covered concrete slab beneath the home; improper installation and leveling of the home causing uneven distribution of weight on the home's support beams; separation of two halves of the home causing twisting of the interior walls; doors that were difficult to open; a continually widening gap in the ceiling peak; and damage to a decorative base wall around the perimeter of the home. Plaintiffs assert that Defendants took no action to correct these problems.

On April 26, 1999, Plaintiffs, through counsel, rescinded the transaction and revoked acceptance of the manufactured home. Defendants Asa Elsea and Elsea, Inc. refused to honor the rescission and Defendant Oak Hill continues to demand payment of the $66,000 principle of the construction loan. At an on-site inspection conducted on June 17, 1999, Defendants Asa Elsea and Ron Eitel agreed that the home had numerous defects. Asa Elsea later represented that Elsea, Inc. would correct the defects in the home during the warranty period, which extended until November, 1999. On December 31, 1999, Plaintiffs gave up the home, conveying their interest to Defendant Oak Hill Banks.

### B. Facts Relating to Plaintiffs' Class Certification Motion

Plaintiffs purport to bring this action on behalf of themselves and all others who, on or after September 1, 1997, have or will purchase manufactured homes from Elsea, Inc. for use as a personal residence. Plaintiffs also seek to certify a sub-class of persons purchasing manufactured homes from Elsea, Inc. any time on or after

September 1, 1998, who have or will finance their purchases through Defendant Oak Hill.

Plaintiffs submitted fifty-nine "declarations of fact" received in response to a questionnaire their counsel sent to other customers of Elsea, Inc. The declarations of fact, which were signed "under penalty of perjury," contain unsworn statements by other customers of Elsea, Inc. who have experienced problems more or less similar to those experienced by Plaintiffs. At oral argument, Plaintiffs represented that the number of these declarations in their possession had grown to "approximately eighty."

### III. DISCUSSION

Section 2310(d) of Magnuson–Moss provides Plaintiffs with their individual federal cause of action in this matter:

(1) Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged

by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction in any State or the District of Columbia; or

(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

(3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—

(A) if the amount in controversy of any individual claim is less than the sum or value of $25;

(B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

(C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d).

It is clear that Plaintiffs satisfy the requirements of subsections (3)(A) and (3)(B) that the amount in controversy for each individual claim equal or exceed $25 and that the total amount in controversy equal or exceed $50,000 in that they claim to have been damaged in the amount of $66,000 in debtor liability alone. It is equally clear that Plaintiffs could not maintain a class action directly under Magnuson–Moss because they cannot satisfy the requirement of subsection (3)(C) that the number of named plaintiffs equal or exceed one hundred.[2] Rather than giving up their pursuit of a class action in the face of this insurmountable jurisdictional bar, however, Plaintiffs' attempt to launder their purported class through 28 U.S.C. § 1367 and Federal Rule of Civil Procedure 23.

As a threshold matter, it is settled that § 2310(d)(3)(C) means just what it says: one hundred or more plaintiffs must be *named* in the complaint in order for a class action to proceed under Magnuson–Moss in federal court. *Barr v. General Motors Corp.*, 80 F.R.D. 136, 138 (S.D.Ohio 1978). Furthermore, the one hundred-plaintiff requirement for the maintenance of a class action is in addition to the requisites of

---

**2.** The number of plaintiffs currently named is two. The number of potential class members individually identified by Plaintiffs is "approximately eighty."

Rule 23, not in their stead. *Id.* at 139 n. 5; *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 600 n. 4 (S.D.N.Y.1982); *see also Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1006–07 (D.C.Cir.1986) (Bader Ginsberg, J. & Edwards, J.). Plaintiffs who seek to bring class actions under Magnuson–Moss may not in so doing, therefore, avoid the strictures of Rule 23. *See Walsh,* 807 F.2d at 1006–07; *Feinstein,* 535 F.Supp. at 600 n. 4.

Plaintiffs in the case *sub judice* seek to do the converse: they would avoid the one hundred-plaintiff requirement of Magnuson–Moss by asserting only state causes of action in their purported class action and bringing it as a supplemental claim pursuant to 28 U.S.C. § 1367. While ingenious, this bit of artful pleading[3] does not carry the day for Plaintiffs.

As the District of Columbia Circuit has noted:

> Congress passed Magnuson–Moss in part to create additional remedies for breach of warranty, and to allow for the possibility of class actions in federal court. Congress' primary purpose in enacting Magnuson–Moss, however, was to provide minimum disclosure and content standards particularly for written warranties, not to actively promote class actions in federal court.

*Walsh,* 807 F.2d at 1006–07. The desire of Congress to confine the majority of Magnuson–Moss claims to state courts manifests itself not only in the one hundred-plaintiff requirement for maintaining class actions of § 2310(d)(3)(C), but also in the amount in controversy requirements of §§ 2310(d)(3)(A) and 2310(d)(3)(B). Each of these jurisdictional bars is applicable only to claims pressed in federal courts. *See* 15 U.S.C. § 2310(d)(3). The use of these filters to restrict most Magnuson–Moss actions to state courts in not surprising in that it is "beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law, except as expressly modified

by Magnuson–Moss, in section 110(d) breach of warranty actions." *Walsh,* 807 F.2d at 1013–14; *see also* 15 U.S.C. § 2301(7) (defining "implied warranty" as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product."). The reasonable inference to be drawn is that ·Congress felt claims demanding the application of state warranty laws could, for the most part, best be handled by state courts.

Plaintiffs here invoke Magnuson–Moss to pursue their essentially state warranty claims in federal court. Because their individual Magnuson–Moss claims satisfy all jurisdictional requirements, this is clearly their right under the statute. *See* 15 U.S.C. § 2310(d). Plaintiffs also assert individual claims arising directly under state law, finding subject matter jurisdiction in 28 U.S.C. § 1367. It goes without saying that this is a proper reading of the federal supplemental jurisdiction statute. Section 1367, however, denies this Court subject matter jurisdiction over Plaintiffs' class claims because it offers supplemental jurisdiction only when not "expressly provided otherwise by Federal statute...." 28 U.S.C. § 1367(a). Magnuson–Moss expressly provides that class actions with named plaintiffs numbering fewer than one hundred are not cognizable in district courts of the United States. *See* 15 U.S.C. § 2310(d). As the number of named plaintiffs in the purported class action *sub judice* currently stands at two, and as Plaintiffs have made no assertion that they are even aware of more than "approximately eighty" other individuals whom conceivably could be named as plaintiffs, Plaintiffs' purported class action is not cognizable in this Court under Magnuson–Moss. It is therefore likewise not cognizable under 28 U.S.C. § 1367.

Plaintiffs argue that § 1367 should pose no barrier to their purported class action because they are seeking to certify their

---

**3.** At oral argument, Plaintiffs conceded that most, if not all, of the claims they assert

under OCSPA could have been brought directly under Magnuson–Moss.

state claims, not those arising under Magnuson–Moss. The one hundred-plaintiff jurisdictional bar of Magnuson–Moss, according to Plaintiffs' reasoning, is therefore inapplicable to their action. That Plaintiffs are forbidden from maintaining a class action in federal court by the very statute upon which they rest their subject matter jurisdiction would then be of no moment. While the Court admits that this argument does have some syllogistic appeal, it finds that § 1367(a) must be read to avoid such a perverse result. Where Magnuson–Moss is the sole jurisdictional hook in play, plaintiffs in federal court must satisfy the requirements of 15 U.S.C. § 2310(d)(3), as well as those of Rule 23, to maintain a class action. *Cf. Walsh,* 807 F.2d at 1006–07; *Feinstein,* 535 F.Supp. at 600 n. 4; *Barr,* 80 F.R.D. at 139 n. 5.

Finally, even reading § 1367(a)'s "expressly provided otherwise" exception as narrowly as Plaintiffs suggest it should be read, this Court would still dismiss of Plaintiffs' class claims pursuant to 28 U.S.C. § 1367(c)(4), which mandates that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—... (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In this case, Magnuson–Moss's one hundred-plaintiff jurisdictional bar to maintaining class actions is an "exceptional circumstance," and Plaintiffs' attempt to subvert the will of Congress and this express prerequisite by laundering their purported class through § 1367 and Rule 23 is a sufficiently "compelling reason" to decline supplemental jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' purported class action is **DISMISSED,** and Plaintiffs' Amended Motion for Class Certification is **DENIED.**

**IT IS SO ORDERED.**