**Richard LIEB, on behalf of himself and on behalf of all others similarly situated, Plaintiff,**

v.

**AMERICAN MOTORS CORPORATION and Jeep Corporation, Defendants.**

**No. 81 Civ. 1004 (RLC).**

United States District Court,
S. D. New York.

Sept. 20, 1982.

Milberg, Weiss, Bershad & Specthrie, New York City, for plaintiff; David J. Bershad, Sol Schreiber, Jerome M. Congress, Jeremy Heisler, Zachary A. Starr, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for defendants; Joseph L. Forstadt, Jay P. Mayesh, Brian M. Cogan, John B. Berringer, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff in this action for fraud, strict products liability and breach of warranty moves to certify a class of plaintiffs composed of "all persons or entities who purchased Jeep Corporation [("Jeep")] CJ–5 jeeps, model years 1977 through 1981, with the exception of purchasers who have sustained physical injury from a rollover of a CJ–5 jeep or who sustain such injury prior to the time this action is tried." The breadth of this proposed class is so great and the issues of fact and law are so complex and variegated that certification is inappropriate. For the reasons discussed below, the motion is denied.

The complaint alleges that defendants have intentionally sought to deceive the public concerning the safety of the CJ–5 jeep, a popular "utility" vehicle. Approximately 250,000 of these vehicles are registered for use on the American highways and an indeterminate number are in operation worldwide. The gravamen of plaintiff's claim is that, beginning in 1977 or earlier, defendants have marketed the CJ–5 as a highly stable car suitable for ordinary on-road and highway use while they knew that design defects rendered the automobile susceptible to rollovers during moderate speed turns and that occupant protection systems would not prevent serious injuries in the event of such a spill. Defendants did not alert purchasers of the CJ–5 of these dangers. Moreover, through nationally disseminated sales and promotional materials, including advertisements and written warranties, defendants purposefully and repeatedly portrayed their product as an ideal multipurpose family and recreational vehicle. As a result of this sales campaign, the vehicle buying public perceived the CJ–5 as a means of transportation equally suited for desert sands, river gullies, suburban drives and highspeed freeways and was unaware that the jeep could be driven safely on normal roads only with the exercise of special caution. If driven as an ordinary passenger car, the Jeep is likely to roll over and in that circumstance, the vehicle's roll bar and seat belts will not protect against serious injuries.

Unaware of these hazards and encouraged by Jeep promotional literature and previous jeep ownership, Lieb purchased a new CJ–5 in 1977. He claims that the defendants, not the dealer who actually sold him the vehicle, defrauded him in regard to the jeep's safety and suitability for highway driving, breached express and implied warranties concerning the vehicle and caused him to suffer economic loss by charging a price for the automobile that is far in excess of its worth if its safety limitations are known.

Plaintiff seeks compensatory and punitive damages for himself and his class and injunctive relief to require defendants to warn class members of the CJ–5 safety defects and to cease issuing false statements about the vehicle.

As a prerequisite to certification of a proposed class, the would-be representative must persuade the court that the four requirements of Rule 23(a), F.R.Civ.P.,—numerosity, commonality, typicality, and adequacy—have been met. *See e.g., Greeley v. KLM Royal Dutch Airlines,* 85 F.R.D. 697, 700 (S.D.N.Y.1980) (Ward, J.) (burden of persuasion); *Feinstein v. Firestone Tire and Rubber Co.,* 535 F.Supp. 595, 600 (S.D.N.Y. 1982) (Haight, J.) (requirements of Rule 23(a)). Despite the sheaves of paper plaintiff has submitted in support of his motion, there is considerable doubt that certification of the proposed class is appropriate. The principal shortcoming in Lieb's proposal derives from the breadth of the class he seeks to certify and the nature of the legal claims he asserts. Defendants have made a compelling showing that Lieb, or indeed any individual, could not qualify as a typical class member because the possible claims of the class members are too diverse and perhaps even adverse.

Among the most glaring differences among class members are the variety of vehicles that they have purchased. Lieb alleges defects in CJ–5 handling characteristics and in the jeep's passenger safety devices. Defendants have shown that in

the relevant time period, 1977 through 1981, the CJ–5 underwent substantial changes in the nature of occupant protection provided by defendants as standard equipment. In addition, throughout this period class members were likely to have modified their vehicles by the addition of optional equipment purchased through jeep dealers (who are not defendants, but are proposed class members) or automotive suppliers. These modifications certainly affected, sometimes adversely and sometimes favorably, the safety and stability of the CJ–5. The roll bar, for example, was not standard factory equipment on plaintiff's vehicle and did not become so until April, 1979. The roll bar design, moreover, was altered in January, 1979 to provide improved protection. Finally, in June, 1980 defendants added a shoulder harness to the standard lap belt restraint system. Lieb has not even suggested the court could sort through these different safety features and identify one as a typical configuration. Accepting the allegation that his particular vehicle had latent dangers and inadequate protection does not lead to any conclusion about subsequent designs. Although some design defects may be common to all CJ–5 jeeps manufactured in this time period, the variation in vehicles purchased from defendants is so great that no one vehicle can be considered to give rise to typical claims for the entire class.

Lieb also glosses over differences in the inducements to purchase jeeps that class members experienced. Defendants have shown that they engaged in multiple sales campaigns relying on different portrayals of the CJ–5 in different markets and at different times. Even the plaintiff could not, in deposition testimony, identify with any particularity whatsoever, the nature or the content of the media that induced him to buy his jeep or that created the impression that the vehicle possessed highway handling characteristics equal or superior to regular passenger vehicles. Defendants, by contrast, have introduced unsolicited correspondence from CJ–5 purchasers who are potential class members who unequivocally state that they received printed materials from defendants that warned of the unique handling characteristics of the vehicle and that they otherwise were aware of the differences between driving a jeep and driving a standard automobile. Rather than revealing typicality, a review of the record for certification suggests that the class defined by Lieb is marked by its heterogeneity and that Lieb is in no ways typical of more than a small portion of the proposed class's numbers.

A further question regarding the typicality of Lieb's claim that stems from the breadth of the proposed class arises from the inclusion in the class of *all* purchasers of the CJ–5. This group includes primary purchasers, i.e., entities that purchased directly from defendants, and secondary purchasers, who include persons purchasing from jeep dealers and persons buying used cars from primary or secondary purchasers. Among the primary purchasers are government entities, military authorities and jeep dealers. These class members negotiated their acquisitions directly with defendants; secondary purchasers, such as Lieb, by contrast, negotiated with primary purchasers. The knowledge of jeep handling and safety features of the primary purchasers, and the inducements directed at them must have differed significantly from the knowledge of the inducements directed towards secondary purchasers. The inclusion of jeep dealers in the class poses special problems because many of them would likely be extraordinarily knowledgeable about the vehicle and in many cases would have been involved in making representations about the vehicle to secondary purchasers. Lieb apparently ignores the complexity of the class he seeks to certify and provides the court with no guidance to understand how he can be considered the sole typical representative of a class with knowledge and interests as diverse as the one he proposes to certify.

Of course, typicality does not require identity, but Lieb's claims are beyond mere incongruity with other class members. Inclusion of *all* purchasers, primary and secondary, creates a class composed of persons with claims that diverge along several paths. Entities which bought vehicles directly from defendants in fleet-sized quan-

tities cannot reasonably be thought to have been subject to the same kind of inducements, such as television or print advertising targeted to specific geographic or economic markets, as were secondary purchasers from dealers. On the other hand, these primary purchasers would not be susceptible to defenses directed at Lieb and other secondary purchasers based upon the lack of privity or direct negotiations between defendants and secondary purchasers. The availability of unique defenses and the presence of disparate claims are grounds to find a proposed plaintiff an untypical or inadequate class representative. *See, e.g., Zenith Laboratories, Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); (unique defenses) *Kline v. Wolf,* 88 F.R.D. 696, 699 (S.D.N.Y.1981) (Weinfeld, J.) (same); *Ingram v. O'Bannon,* 88 F.R.D. 653, 655 (E.D.Pa.1980) (disparate claims); *Greenspan v. Brassler,* 78 F.R.D. 130, 132–33 (S.D.N.Y.1978) (MacMahon, J.) (unique defenses).

■ Lieb himself is perhaps among the least adequate of potential representatives because of the peculiar circumstances surrounding his purchase of a CJ–5. Lieb, a New York resident, acquired the vehicle in Massachusetts for use at a vacation home he maintains in that state. Massachusetts' limitation on exemplary damages in consumer fraud actions is such that defendants may be able to develop a factual record sufficient to convince the court that Massachusetts law governs his claim and that even if his damages were trebled, as the statute permits, Lieb could not receive more than $10,000, thereby necessitating dismissal of his claims. In addition, if New York law is chosen to govern Lieb's claim, his breach of implied warranty claim would fail because New York does not permit such an action against a remote seller if only economic loss is involved. *See Mendelson v. General Motors Corp.,* 105 Misc.2d 346, 432 N.Y.S.2d 132 (Sup.Ct. Nassau Co. 1980), *aff'd,* 81 A.D.2d 831, 441 N.Y.S.2d 410 (2d Dep't 1981). Finally, the viability of his strict products liability claim is seriously in question in light of the recent New York State Court of Appeals decision putting

New York law in harmony with Massachusetts in denying a cause of action for recovery of economic loss on a strict products liability theory. *See Schiavone Construction Co. v. Elgood Mayo Corp.,* 56 N.Y.2d 667, 451 N.Y.S.2d 720, 721, 436 N.E.2d 1322 (1982). Lieb's susceptibility to the defense that state law does not permit recovery of his alleged losses on certain legal claims that he seeks to litigate on the class's behalf renders him an improper class representative because certain class members would likely be able to bring claims under the laws of states that do provide remedies for breach of implied warranty from a remote seller or for strict products liability for economic loss. *Cf. Industrial Graphics, Inc. v. Asahi Corp.,* 485 F.Supp. 793, 804 (D.Minn., 1980) (applying Minnesota warranty law); *Western Equipment Co. v. Sheridan Iron Works, Inc.,* 605 P.2d 806, 810 (Wyo.1980) (warranty); *Santor v. A and M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305, 312 (1965) (products liability). As referred to above, the availability of defenses peculiar to a proposed representative's claims necessitates denying certification in consideration of due process rights of potential class members. *See, e.g., Zenith Laboratories, Inc. v. Carter-Wallace, Inc., supra,* 530 F.2d at 512; *Kline v. Wolf, supra,* 88 F.R.D. at 699.

Because plaintiff has not demonstrated that his claims are typical of the claims of the proposed class members and that he is an adequate representative of the class he proposes for certification, it is unnecessary to determine whether he has satisfied the requirements of Rule 23(b), F.R.Civ.P. It is worthwhile to note, however, that even if Lieb had surmounted the Rule 23(a) hurdle, he would have faced an impenetrable barrier, at least for certification under Rule 23(b)(3).

Lieb has brought a case that brings to mind the Advisory Committee's caveat concerning Rule 23:

> although having some common core, a fraud case may be unsuited for treatment as a class action if there was a material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

39 F.R.D. 98, 103 (1966). In addition to the multiple questions of fact that would arise in litigating the claims of a class of the size and breadth suggested by Lieb, divergence of law would accompany the claims of various class members depending upon the state law governing their claim and the particular facts that gave rise to their claim. In the context of the numerous communications made by defendants to jeep purchasers—through print and electronic media, sales brochures, owners' manuals and warranties—the variation in state law concerning actionable misrepresentation would necessitate individualized treatment of the predominant number of the class members' claims. Proof of reliance, another element of fraud, would compound this difficulty by raising additional discrete factual questions for each class member. Although Rule 23 was not written to exclude all common law fraud claims from class treatment, a more carefully crafted and narrowly circumscribed class is necessary before proceeding via the class action route.

Accordingly, the motion to certify the proposed class is denied.

IT IS SO ORDERED.