**In re FORD MOTOR CO. BRONCO II PRODUCT LIABILITY LITIGATION**

No. CIV. A. 991.

United States District Court, E.D. Louisiana.

Feb. 27, 1997.

362

Stephen B. Murray, Murray Law Firm, New Orleans, LA, Michael H. Ellis, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, T. Roe Frazer, II, Richard A. Freese, Langston, Frazer, Sweet & Freese P.A., Jackson, MS, Daniel E. Becnel, Jr., Becnel, Landry & Becnel, Reserve, LA, Patrick W. Pendley, Attorney at Law, Plaquemines, LA, Irwin B. Levin, Cohen & Malad, Indianapolis, IN, for Plaintiffs.

Colvin Gamble Norwood, Jr., McGlinchey, Stafford & Lang, New Orleans, LA, John Beisner, Brian D. Boyle, O'Melveny & Myers, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

SEAR, Chief Judge.

### I. The Motion

Plaintiffs in these consolidated actions move to certify a class of plaintiffs composed of

[a]ll persons and entities who, as of July 26, 1994, own or have an ownership interest in a Ford Bronco II vehicle and reside in the United States (including the District of Columbia and the Commonwealth of Puerto Rico), less and except those persons who are members of the class previously certified in Mary Rice, et al. v. Ford Motor Company, CV 93–65 (Circuit Court of Green County, Ala.) [1]

Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b)(3) and, in the alternative, Rule 23(b)(1) or (b)(2).

Defendant, Ford Motor Company ("Ford"), has filed an opposition to plaintiffs' motion. Reply and surreply memoranda have been filed on behalf of plaintiffs and defendant, respectively. Additionally, at the suggestion of the parties I permitted supplemental briefing on the matter of choice of law, to be considered in connection with plaintiffs' motion for class certification. Finally, the parties have asked me to consider affidavits of their expert witnesses in lieu of conducting an evidentiary hearing on certification, with the understanding that I would conduct such a hearing if I considered it necessary to rule on plaintiffs' motion. I find no hearing necessary.

### II. Factual and Procedural Background

Plaintiffs' Second Amended Class Action Complaint ("Second Amended Complaint") alleges that defendant has sought to deceive the public concerning the safety of the Bron-

---

**1.** With the exception of the carving out of the Alabama plaintiffs, this is the same class plaintiffs previously sought to certify for purposes of a proposed settlement. The proposed class does not encompass claims related to past or future personal injury claims by Bronco II owners arising from accidents implicating the alleged defect.

co II, a utility vehicle marketed by Ford between the years 1983 and 1990, and still a part of the resale market. By the parties' own estimate, approximately 650,000 Bronco II vehicles are still registered for use on American highways. Plaintiffs allege, generally, that despite knowledge of a design defect in the Bronco II that renders the vehicle unreasonably prone to roll over in normal driving conditions, Ford marketed the vehicle as a high quality vehicle free of dangerous defects and, through omissions and misrepresentations, concealed the rollover problem from the public.

The Second Amended Complaint includes claims for common law fraud, misrepresentation, breach of express and implied warranty, redhibition, breach of contract and violation of the Magnuson–Moss Warranty Act ("Magnuson–Moss Act" or "the Act").[2] Approximately 120 plaintiffs are named in the Complaint pursuant to the provisions of the Magnuson–Moss Act. Plaintiffs seek damages representing economic loss suffered as a result of having purchased their vehicles for a price that is in excess of its worth if the rollover problem is known.[3] Plaintiffs also seek injunctive relief to require Ford to provide public notice of the defect and/or to recall and retrofit all Bronco IIs. Finally, plaintiffs seek punitive damages, attorneys' fees and costs.

Since the February 9, 1994 transfer of the five core actions[4] to this district by the Judicial Panel on Multidistrict Litigation ("JPML"), several significant events have occurred. Within months of the transfer, former class counsel and Ford submitted a proposed settlement. The proposed settlement provided for provision to all class members, on request, of various informational material, a free inspection, and an inspection-incentive consisting of a complimentary hand lantern, road atlas, and the opportunity to receive a cellular phone. Class counsel sought to recover fees of approximately $4 million in connection with the settlement.[5] After conducting a fairness hearing on November 8, 1994 and considering volumes of evidence and documents related to the fairness of the proposed settlement, on March 20, 1995 I rejected the proposed settlement. My basis for rejecting the settlement was that, considering the recovery obtained for the class and the very limited amount of discovery actually taken, class counsel fees were so excessive as to suggest collusion and to render inadequate the terms of the settlement and the legal representation of the class. I did not comment on the appropriateness of the remedy offered by Ford, per se.

Following rejection of the proposed settlement, my focus shifted to various motions to dismiss filed by Ford in the core actions.[6] After resolution of those motions, in late 1995 and early 1996 the parties began to concentrate on the class certification issue. On April 1, 1996 I issued a Discovery Scheduling Order to govern the ongoing merits discovery in the core actions, and I directed the parties to continue with discovery even though I had not yet ruled on plaintiffs' motion for class certification. In the early Fall of 1996, counsel asked me to stay discovery so that they might attempt to resolve the litigation amicably. In mid-October 1996 I stayed discovery pending counsel's attempts to negotiate a settlement and I participated in several of the discussions.

On February 3, 1997, I determined that settlement had failed to yield satisfactory results to date, advised counsel that I intended to rule on plaintiffs' motion to certify a class for trial, and afforded the parties time to submit additional, non-repetitive briefing of the issue and/or to request a hearing although previously they had waived the

---

**2.** Although the Magnuson–Moss Act provides a basis for federal jurisdiction under certain circumstances, plaintiffs' substantive claims under the Act are merely derivative of plaintiffs' state law express and implied warranty claims.

**3.** Also, for the first time in their reply memorandum to Ford's opposition to class certification, plaintiffs seek as an alternative measure of damages the cost to cure the defect in their vehicles.

**4.** Presently there are five core actions and two tag-along actions comprising the captioned litigation.

**5.** This sum had at no time been communicated to the putative class members.

**6.** See Record Doc. Nos. 221, 254, 259.

hearing.[7] Defendant submitted a memorandum I find to be merely repetitive of prior arguments, and no party has requested a hearing on class certification.

### III. *Discussion*

### A. Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 23(a) requires that four conditions be met in order for a proposed class of plaintiffs or defendants to be certified. The four requirements are commonly referred to as: (1) numerosity; (2) typicality; (3) commonality and (4) adequacy of representation. Fed.R.Civ.P. 23(a). In addition to these four criteria, Rule 23(b) defines three different types of class actions, and the party moving for certification must demonstrate that the action falls within one of the 23(b) categories. The party moving for certification thus bears the burden of proving each of the elements of Rule 23(a) and one of the factors included in Rule 23(b). *Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571, 573 (5th Cir.1995); *Horton v. Goose Creek Ind. School Dist.*, 690 F.2d 470, 486 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

Because classwide relief is an exception to the general rule that litigation be conducted by and on behalf of individual named parties only, a district court must rigorously analyze a motion for class certification to insure that the requirements of Rule 23 are met. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 160–61, 102 S.Ct. 2364, 2369, 2372, 72 L.Ed.2d 740 (1982). The decision to grant or deny certification initially is committed to the sound discretion of the district judge and will not be overturned except for abuse of discretion. *J.R. Clearwater, Inc. v. Ashland Chemical Co.*, 93 F.3d 176, 180 (5th Cir.1996) (citation omitted);

*Redditt v. Mississippi Extended Care Centers, Inc.*, 718 F.2d 1381, 1387 (5th Cir.1983). Although the court should not decide the merits of the case on a motion for class certification, it may analyze essential elements of substantive claims in order to evaluate whether the requirements of Rule 23 have been met. *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). It may also review pleadings and facts procured through discovery. *Id.* (*citing* Manual for Complex Litigation § 30.11 (3d ed.1995)).

■ Plaintiffs seek to certify a class pursuant to Rule 23(a) and (b)(3), Plaintiffs also summarily invoke 23(b)(1) and 23(b)(2) in the alternative to 23(b)(3), but offer no argument or proof under those provisions. Neither, based on my familiarity with this action, the various written submissions filed to date, and certain public statements made by one of plaintiff counsel, do I find the action appropriate for certification under Rule 23(b)(1) or (b)(2). Money damages are the primary remedy sought by plaintiffs, making certification under Rule 23(b)(2) unavailable.[8] There is nothing in the record to suggest that this is the kind of action in which the prosecution of separate actions would create a risk of inconsistent adjudications or establish inconsistent standards, and therefore certification under Rule 23(b)(1) likewise is unavailable.[9] Thus, if plaintiffs' action is to be certified, certification must be proper under Rule 23(b)(3).

Defendant opposes certification on grounds that plaintiffs have failed to (1) demonstrate the availability of classwide proof on various issues; (2) provide an extensive analysis of applicable laws so as to demonstrate the predominance of common legal issues and superiority of class action treatment; (3) demonstrate the predominance of common fact issues and/or (4) demonstrate their abili-

---

7. Memorandum and Order entered on February 3, 1997 (Record Doc. No. 351).

8. *See Walsh v. Ford Motor Company*, 807 F.2d 1000, 1003 (D.C.Cir.1986) (Rule 23(b)(2) may not be invoked where the appropriate final relief relates exclusively or predominantly to money damages); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 600–601 (S.D.N.Y.1982). Plaintiff counsel in these consolidated cases have not seriously pursued the injunctive remedy.

Further, Alabama counsel in related state court litigation has publicly stated that "none of the plaintiffs' proposals for making the Bronco II more stable, primarily by widening the wheel base, [are] technically or economically feasible." Milo Geyelin, *Ford Reaches a New Settlement in Bronco II Rollover Litigation*, Wall St. J., January 30, 1997, at B12.

9. *See Feinstein*, 535 F.Supp. at 601 n. 5.

ty to provide adequate representation of the putative class members as required by Rule 23(a). Defendant's first three arguments are properly considered as arguments under Rule 23(b)(3), but I will first consider the requirements of Rule 23(a).

## B. Rule 23(a) Requirements

### 1. Rule 23(a)(1)–Numerosity

■ Rule 23 (a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). Although there is no arbitrary number of putative class members that renders joinder impracticable, defendant admits in its Answer and has repeated on numerous occasions that it sold at least 700,000 Bronco II vehicles in the United States, including the District of Columbia and Puerto Rico, and believes that approximately 650,000 of the vehicles are still in existence. Thus, although a variety of factors may properly inform the numerosity element, it seems clear that the mere size of the putative class renders joinder of all Ford Bronco II owners impracticable here.

### 2. Rule 23(a)(2)—Commonality

■ Rule 23 (a)(2) requires that there are "questions of law or fact common to the class." This test is met when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982). For this reason, "the threshold of commonality is not high," *Jenkins v. Raymark Industries*, 782 F.2d 468, 472 (5th Cir.1986), and courts usually do not spend a great deal of time addressing whether common issues exist, but instead focus on the related issue under Rule 23(b)(3) of whether common issues *predominate* over individual ones.

Plaintiffs identify six issues that they maintain are common to all plaintiffs by virtue of Ford's course of conduct in manufacturing and selling the Bronco II: (1) the presence of a potentially fatal design defect in the Bronco II; (2) Ford's knowledge of the design defect; (3) Ford's willful concealment of the design defect from the marketplace; (4) misrepresentations by Ford regarding the Bronco II, made with intent to defraud, upon which plaintiffs relied in purchasing their Bronco IIs; (5) Ford's express and implied warranty that the Bronco IIs were safe and not suffering from a latent defect; and (6) the relief or damages to which all class members are entitled.[10]

Defendant has devoted substantial effort to demonstrating that the aggregated treatment of plaintiffs' claims is foreclosed because none of these allegedly common issues is susceptible to common proof. The Fifth Circuit has held that, in determining whether common issues predominate over individual ones, a factor the court must consider is whether the issues are subject to generalized proof. *State of Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 320–324 (5th Cir.1978). This factor ordinarily is considered in connection with the Rule 23(b)(3) predominance inquiry because the court usually can find at least one issue that can be said to be "common" under the liberal wording of Rule 23(a)(2). Accordingly, I assume for present purposes that there is at least one common issue among the class members and I will consider the issue in more detail under the predominance inquiry of Rule 23(b)(3).

### 3. Rule 23(a)(3)—Typicality

■ Rule 23 (a)(3) requires that the claims or defenses of the proposed class representatives be typical of the claims or defenses of the proposed class. The focus is on the general similarity of the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). A named plaintiff's claim is "typical" if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3–13, at 3–76 (3d Ed.1992).

**10.** Plaintiffs' Memorandum in Support of Motion for Class Certification, at p. 13.

■ The test for typicality, like commonality, is not demanding, *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir.1993), and focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the general similarity of the legal and remedial theories behind their claims. *Jenkins*, 782 F.2d at 472; *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993). Some courts find typicality with little to no analysis, and in spite of differences in underlying facts and legal theories.

■ The typicality requirement merges to some degree with the Rule 23(a)(4) requirement of adequacy of representation, insofar as the purpose behind this element is ensuring that the interests of the absent class members are protected. With this in mind, a troublesome aspect of this litigation is that there are 120 named plaintiffs. Assuming that all 120 named plaintiffs are to be considered the "class representatives" for purposes of assessing typicality, several problems arise. First, counsel has advised the court on several occasions that as discovery progresses the names of the 120 individuals may change if, for example, it is discovered that a particular named plaintiff no longer owns his Bronco II. Second, even under the present listing, the vast majority of the named plaintiffs (at least 70 of the 120) reside in or purchased their Bronco IIs in Louisiana. Louisiana does not recognize a claim for breach of warranty, but instead has a unique cause of action for "redhibition" not recognized in other jurisdictions. Finally, as discussed in greater detail hereinafter, the laws of 51 jurisdictions are potentially implicated in this class litigation, yet only nine states, at the most, are represented by the named plaintiffs. All three of these circumstances appear to weigh against a finding that the claims of the named "representative" plaintiffs are "typical" of the absent members.

Defendant has not expressly made an issue of typicality in its opposition memorandum. However, defendant has undertaken an extensive analysis of the differences in the laws of the fifty-one jurisdictions implicated by this nationwide putative class action. In at least one case involving an alleged stability problem in a utility vehicle, the Southern District of New York found "variation[s] in the vehicles purchased from defendants so great that no one vehicle can be considered to give rise to typical claims for the entire class." *Lieb v. American Motors Corp.*, 95 F.R.D. 507, 509 (S.D.N.Y.1982).[11] This is essentially the same "variations" analysis the Fifth Circuit applies as part of the Rule 23(b)(3) predominance inquiry, and I apply the analysis in Section C(1) *infra*.[12]

### 4. Rule 23(a)(4)—Adequacy of Representation

Rule 23 (a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). The adequacy requirement looks at both the class representatives and their counsel. *Jenkins*, 782 F.2d at 472. There is no formula for deciding this issue; the adequacy determination is made based on the circumstances of each individual case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir.1981).

■ Defendant maintains that the named plaintiffs are not adequate representatives because they have failed to cooperate in discovery. According to defendant, only one-third of the named plaintiffs have cooperated in discovery. Failure to cooperate in discovery may support a finding that class representatives are inadequate. *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y.1981). Here, plaintiffs' only explanation for the poor response to discovery is the large number of named

---

**11.** Based on plaintiffs' failure to satisfy the requirements of typicality, adequacy and/or commonality, the *Lieb* court denied certification of a class of owners of CJ-5 jeeps purchased over a five-year period, a class that purported to exclude owners who had sustained injury from accidents.

**12.** *See also Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632 (3d Cir.), *cert. granted sub. nom.* —— U.S. ——, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996)(citing *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996)) (even when the named plaintiffs include a fairly representative mix of plaintiffs, an underlying lack of commonality and attendant conflicts necessarily destroy the possibility of typicality).

plaintiffs. I do not understand this explanation and, in any event, this is a situation created by plaintiffs' decision to assert claims under the Magnuson–Moss Act and thus is not an acceptable excuse.

Defendant further points out that several of the named plaintiffs who have responded to discovery have provided flatly contradictory responses in their written responses and deposition testimony,[13] undermining the reliability of the record and highlights the named plaintiffs' inability to protect the interests of the class. Plaintiffs have not responded to this accusation in any manner.

■ The problems addressed in connection with the discussion of typicality also are relevant to the adequacy determination. As I have indicated, one of the sources of these problems is the fact that there are 120 named plaintiffs. Additional problems are created by the variations in the laws of the fifty-one jurisdictions connected to this action and the fact that the named plaintiffs' residences are confined to nine of the fifty-one jurisdictions. Another circumstance that creates adequacy concerns is the fact that the monetary relief the class representatives seek on behalf of the class is "loss of value" or "cost to repair," and does not encompass death, injury, property damage or other consequential damage. Courts have recognized that in these circumstances, by attempting to tailor their action in such a way as to improve their ability to establish commonality, class representatives may in fact create an adequacy problem.[14]

It is clear to me that, as presently constituted, the named plaintiffs cannot by any stretch of the imagination be considered adequate representatives of the class as plaintiffs define it. Even assuming reconstitution of the named plaintiffs would solve the ade-

quacy problems, plaintiffs still confront the problems discussed below, in Section C.

## C. Rule 23(b)(3)

Rule 23(b)(3) provides that

[a]n action may be maintained as a class action if

. . .

(3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to adjudication of the controversy.

Thus, to be certified as a(b)(3) class, plaintiffs must show both predominance of common issues over individualized ones, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571, 573 (5th Cir.1995).[15]

### 1. Variations in Law

■ The most pressing issue raised by defendant is the significance any variations in applicable state laws will have in relation to the predominance and superiority requirements. In order to make the findings necessary to certify a class action under Rule 23(b)(3), I "must initially identify the substantive law issues which will control the outcome of the litigation." *State of Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 315 (5th Cir.1978). This requirement is particularly important in the context of a proposed nationwide class action, where there may be differences in state law that defeat findings of predominance and superiority under Rule 23(b)(3). *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996).[16] Accordingly, the party seeking certification of a nation-

---

**13.** For example, one named plaintiff, Arthur Smith, answered interrogatories to the effect that he was no longer in possession of warranty documents provided by Ford, but testified in his deposition that he provided such documents to his attorney.

**14.** *Feinstein*, 535 F.Supp. at 606.

**15.** Because the 23(b)(3) inquiry incorporates the commonality requirement, I will treat Rule 23(a) and 23(b)(3) together.

**16.** The Fifth Circuit stated that "[i]n a multistate class action, variations in state law may swamp any common issues and defeat **predominance.**" Id. at 741 (emphasis added), and that in attempting to discern the applicable law pursuant to the predominance inquiry, the choice of law inquiry in a given case may be so complex as to "ipso facto render[] class treatment not **superior**" for purposes of Rule 23(b)(3). *Id.* at 750.

wide class must "creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'" *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C.Cir.1986).[17]

Plaintiffs assert seven causes of action on behalf of more than 650,000 owners of Ford Bronco IIs in fifty-one jurisdictions. Plaintiffs' causes of action arise under state law, and plaintiffs admit that the states with contacts to the plaintiffs claims include, at a minimum, (1) the place of the plaintiffs' domicile (all states); (2) the place of the defendant's principal place of business (Michigan); (3) the place of the allegedly fraudulent conduct (all, states); and (4) the place of sale (all states). Also relevant is the place of manufacture of the Bronco II (Kentucky). It is therefore beyond dispute that plaintiffs' nationwide class action potentially implicates the laws of 51 jurisdictions.

With respect to the variations in the laws of the 51 jurisdictions, defendant has provided a detailed and fairly exhaustive catalogue of variations among the states' laws on plaintiffs' fraud, misrepresentation, breach of warranty and breach of contract claims. I have already addressed some of these variations in connection with my rulings on several motions to dismiss.[18] For example, the various

states have differing positions with respect to whether the "economic loss doctrine" bars outright plaintiffs' fraud and misrepresentation claims, as well as important differences in the number and substance of elements that must be proven to recover for fraud and/or misrepresentation.[19] Such distinctions have been found to preclude certification of multiple jurisdiction classes.[20] Also clear from defendant's submission and my previous rulings on motions to dismiss is that, with respect to contract and warranty claims, the various states have different vertical privity requirements[21] as well as other variations concerning the scope and application of such claims. This lack of uniformity likewise has been held to preclude certification of a multiple jurisdiction class.[22]

Plaintiffs do not even attempt to address the variations among the laws of the fifty-one jurisdictions potentially implicated by this nationwide class action.[23] Instead, essentially conceding the existence of variations, they rely on Louisiana choice of law principles to urge a unique solution: application of the law of one state—Michigan—to the claims of all class members. Defendant opposes this proposed "solution" under both the Louisiana choice of law rules and constitutional principles.[24]

---

**17.** That plaintiffs assert claims under the federal Magnuson–Moss Act does not preclude application of this rule. Plaintiffs' claims under the Magnuson–Moss Act are derivative of their state law breach of warranty claims. There are no federal claims governed by federal standards in this case.

**18.** In ruling on defendant's motions to dismiss, I was called upon to apply the law of at least nine states, including the laws of the transferor states and several additional states in which named plaintiffs reportedly are domiciled.

**19.** For example, differences in the mens rea requirement, in the definition of a misstatement, and in the standard for discerning reliance.

**20.** *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 883 (5th Cir.1973); *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 139–140 (D.Mass.1988); *Sanders v. Robinson Humphrey/ American Express, Inc.*, 634 F.Supp. 1048, 1067–1069 (N.D.Ga.1986), *aff'd in relevant part and rev'd in part sub. nom.*, 827 F.2d 718 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *Zandman v. Jo-*

*seph*, 102 F.R.D. 924, 929–930 (N.D.Ind.1984); *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 95 F.R.D. 168, 177–178 (D.Del.1982).

**21.** *See also Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271 (D.D.C.1990) (discussing differences among states with respect to vertical privity requirement).

**22.** *See, e.g., Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271 (D.D.C.1990); *Raye v. Medtronic Corp.*, 696 F.Supp. 1273, 1275 (D.Minn.1988); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 605 n. 13 (S.D.N.Y.1982); *Duvall v. TRW, Inc.*, 63 Ohio App.3d 271, 578 N.E.2d 556, 559 (1991); *Osborne v. Subaru of America, Inc.*, 198 Cal.App.3d 646, 243 Cal.Rptr. 815, 820 (1988).

**23.** Plaintiffs' Brief in Support of the Application of Michigan Law, at p. 4.

**24.** This proposed solution has been rejected in similar litigation involving Firestone tires. *Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 605–606 (S.D.N.Y.1982).

■ Assuming that Louisiana law—the law of the transferee forum—properly provides the guiding principles for the choice of law determination,[25] plaintiffs do not even begin to provide the "extensive analysis" of state law variations and choice of law factors called for by Rule 23(b)(3) and/or Louisiana choice of law principles. *Castano*, 84 F.3d at 742–743. In their choice of law analysis, plaintiffs rely almost exclusively on Louisiana Civil Code article 3515, which provides as follows:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Article 3515 states the general comparative impairment principle of Louisiana's conflicts law and serves as the residual rule for cases or legal theories that do not fall within the more specific provisions of the conflicts laws.[26] More specific, cause-of-action-oriented, code articles provide the analysis for the types of legal theories relied on by plaintiffs.[27] Plaintiffs address the relevant cause-of-action-specific code articles only secondarily and cursorily.[28]

■ In attempting to identify the "state whose policies would be most seriously impaired if its law were not applied," plaintiffs fail to "evaluat[e] the strength and pertinence of the relevant policies of **all involved states**," or "the relationship **of each state** to the **parties** and the **dispute**," which are requirements not only of article 3515 but also of the more cause-of-action-specific code articles.[29] Instead, plaintiffs urge that because the laws of Michigan, which is Ford's principal place of business and the locations of certain design decisions, allow recovery under all legal theories invoked by plaintiffs, then (1) as between Michigan and any state that a particular consumer has a cause of action, Michigan is the state whose policies would suffer the most impairment if its laws were not applied and (2) as between Michigan and any state that, like Michigan, affords a broad remedy to consumers, application of Michigan law cannot be considered to impair the other state's policies.

This abbreviated analysis is clearly unacceptable under Louisiana's choice of law principles, where the choice of law determination is a function of the individual defendant, plaintiff, and the circumstances of the claim. What is required is a comparative analysis of Michigan law and the law and policies of **each state** with which the claim has contacts.

---

**25.** The parties point to Louisiana choice of law principles apparently based on the presence of diversity jurisdiction. However, I have questioned whether such jurisdiction is truly present in this case. Where a transferee court must make a choice of law determination, typically the choice of law provisions of the transferor state(s) are used. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *In re Air Disaster at Ramstein, Germany*, MDL 919 (E.D.La.1994).

**26.** *See* La.Civ.Code art. 3515, comment (a) (West 1996).

**27.** For example, article 3537 specifically controls choice of law analysis with respect to conventional obligations (i.e. contracts and warranties). In determining the governing law under article 3537, the court must consider the strength and pertinence of the relevant policies of the involved states in view of (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type and purpose of the contract; and (3) the policies referred to in article 3515. La.Civ.Code Ann. art. 3537 (West 1996).

**28.** Plaintiffs devote no more than three pages of argument to the action-specific articles, and the bulk of this space is spent reiterating arguments made under article 3515.

**29.** *See, e.g.*, arts. 3537 (conventional obligations) and 3542 (delictual and quasi-delictual obligations).

As far as can be discerned at this time, all 51 jurisdictions have some contact with the claims, whether by virtue of being the place where plaintiffs are domiciled or the place where plaintiffs purchased their Bronco IIs. Even assuming Michigan has the most consumer-friendly laws, plaintiffs' cryptic argument that any state whose consumer laws are more rigorous than Michigan's must surrender to the application of Michigan law overlooks the fact that there might be important policy reasons behind a state's adoption of more restrictive consumer-oriented laws, and that application of Michigan law might actually impair these states' policies. It is simply incorrect to assume that the overriding interest in all consumer-oriented cases is protection of the consumer.[30] The policies of each state with contacts must be examined. Plaintiff has not undertaken this analysis.

■ Even if Louisiana choice of law principles supported the application of Michigan law to the claims of all putative class members, constitutional restraints must also be considered before invoking choice of law principles to apply the law of a single state to the claims of citizens of fifty-one (51) United States jurisdictions, who purchased their vehicles in fifty-one different jurisdictions, involving vehicles that were manufactured in Kentucky that had an alleged defect manifested itself in fifty-one United States jurisdictions. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the United States Supreme Court rejected a Kansas court's application of Kansas legal standards to the contract claims of all members of a putative nationwide class, the majority of whom had no independent connection to the Kansas forum. The Court accepted that Kansas, by virtue of defendant's ownership of property and conduct of business in that state, had contacts with the litigation. *Id.* at 819–820, 105 S.Ct. at 2978–2979. Nevertheless, because Kansas lacked a " 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class,"

and substantive conflicts existed between Kansas and other plaintiff jurisdictions, universal application of Kansas' legal standards would frustrate the reasonable expectations of the parties and invade the lawful province of sister states. *Id.* at 822, 105 S.Ct. at 2979.

Plaintiffs maintain that the application of Michigan law to all claims in this litigation will not offend notions of due process or the Full Faith and Credit clause of the Constitution because Ford has its principal place of business in Michigan and design decisions concerning the Bronco II were made in Michigan. Plaintiffs seek to distinguish the *Shutts* case on grounds that, in *Shutts*, Kansas had "minuscule" contacts with the plaintiffs' claims whereas Michigan has "overwhelming" contacts to all of plaintiffs' claims. Contrary to plaintiffs' argument, the *Shutts* Court did not characterize Kansas' contacts as "minuscule." To the contrary, the Court specifically declined to discount Kansas' connections to the litigation, recognizing that the defendant in *Shutts* owned property and conducted substantial business in Kansas. *Id.* at 819–820, 105 S.Ct. at 2978–2979. Plaintiffs also summarily characterize Michigan's contacts to this litigation as "overwhelming," without explaining how Michigan's contacts are more significant than the contacts of the state in which the Bronco IIs were manufactured, where the alleged defect manifested itself, where plaintiffs' purchased their vehicles, where plaintiffs' entered the complained-of transactions, and/or where the allegedly fraudulent conduct occurred.

■ For the foregoing reasons, plaintiffs have failed to convince me that the solution to the variations among the fifty-one relevant jurisdictions' fraud, misrepresentation, breach of express and implied warranty and breach of contract causes of action is the application of Michigan law to the claims of the approximately 650,000 putative class members. Having been unsuccessful in arguing that solution, what remains is a record that reflects so many variations in state laws

---

**30.** *See* Larry Kramer, Rethinking Choice of Law, 90 Colum.L.Rev. 277, 297–300 (1990)(enumerating the various policies that can underlie state law that are relevant to a determination of what law to apply). *See also Farrell v. Ford Motor Co.,*

199 Mich.App. 81, 501 N.W.2d 567, 572–573 (1992) (holding that Michigan has no interest in affording greater rights of tort recovery to citizens of other states, even where the defendant is a Michigan corporation).

that common questions of law clearly cannot be said to predominate for purposes of Rule 23(b)(3).

### 2. Individual v. Common Issues of Fact

Defendant further opposes plaintiffs' motion on grounds that, even assuming some generally applicable legal principles can be identified, the aggregated treatment of plaintiffs' claims is complicated by differences in the underlying facts that renders the facts not susceptible to generalized proof. The Fifth Circuit has held that the manner in which plaintiffs propose to prove certain issues may reveal that individual, as opposed to common, issues of fact predominate for purposes of Rule 23(b)(3). *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 321–323 (5th Cir.1978).

One of the facts that plaintiffs claim they can establish by common proof is the presence of a defect in the Ford Bronco II. Plaintiffs urge that they can show on a class-wide basis that all Ford Bronco IIs marketed between 1984 and 1990 suffer from "a substantially increased and unacceptable propensity to rollover during normal operation."[31] The only design feature to which plaintiffs vaguely attribute this stability problem is the Ford Bronco II's "high center of gravity and narrow and short wheelbase."[32] As class-wide proof of this design defect, plaintiffs submit the report and affidavit of William Medcalf, a mechanical engineer retained by plaintiffs as an expert on the design and possible retrofit of plaintiffs' Bronco IIs.[33]

Mr. Medcalf opines generally that all Bronco II vehicles have an unreasonable propensity to roll over in extreme but reasonably foreseeable maneuvers.[34] He bases his conclusion on the stability index of the Ford Bronco II,[35] as well as on performance testing of "a number of Bronco II configurations"[36] with "a variety of options and in several model years."[37] He admits that neither the testing he has witnessed nor the data he has reviewed has encompassed every possible variation of Ford Bronco II that might affect the vehicle's stability, but nevertheless finds that all Bronco IIs are unreasonably susceptible to rollover. He ultimately concludes that retrofitting Bronco IIs with smaller wheels and tires (from 15″ to 14″) and increasing the wheel track is a remedy that will provide greater resistance to friction-induced rollover in all Bronco IIs.

Defendant maintains that the stability index is not an accurate "common" measure because, contrary to plaintiffs' assertion, all Bronco II vehicles are not substantially the same. According to defendant, the Bronco II was sold over seven years in varying configurations, including two wheel drive and four wheel drive, different tire sizes, different wheel sizes, with variances in mechanical configuration and track width, all of which can affect the stability index.[38] Defendant also submits evidence that a static stability index is not an accurate predictor of a vehicle's rollover propensity because differences in option content, model year,[39] and suspen-

---

**31.** Second Amended Complaint, ¶ 21.

**32.** *Id.* at ¶ 10.

**33.** Plaintiffs also have submitted excerpts from testimony given by various mechanical engineers in personal injury litigation involving rollovers of Bronco IIs. See Appendix A to the Plaintiff's Memorandum in Support of Class Certification. Ford has moved to strike these excerpts as the former testimony of unretained experts that is not admissible under the Federal Rules of Evidence. Plaintiffs respond by asking the court to accept the former testimony merely as "evidence of a body of expert opinion on the existence of a common classwide defect in the Bronco II vehicles." I accept it for that purpose only, but after reviewing it do not find it persuasive of commonality.

**34.** Plaintiffs' Supplement to Motion for Class Certification, Tab A.

**35.** Medcalf Report at p. 6.

**36.** Plaintiffs' Reply to Ford's Opposition, at p. 2.

**37.** Affidavit of William Medcalf at ¶ 3, attached to Plaintiffs' Reply to Defendant's Opposition.

**38.** *See* Report of Defendant's Expert, Lee Carr, Appendix of Expert Reports to Defendant's Opposition to Plaintiffs' Motion for Class Certification, Exhibit A; and Affidavit of Seymour W. Lenovitz, Defendant's Appendix of Exhibits, Exhibit 3.

**39.** Defendant cites as examples of year-to-year design variations different sized engines, tires, anti-lock brakes, and equipment configurations. Memorandum in Opposition to Motion for Class Certification, at pp. 13–15.

sion values[40] can affect the vehicle's center of gravity. Furthermore, defendant submits evidence that after-market modification and differences in vehicle maintenance and use[41] by individual consumers, as well as environmental factors, can affect the handling and stability characteristics of the vehicle.[42]

Plaintiffs do not contest that certain variations in particular Bronco II vehicles can affect stability, and in more recent submissions they shift their focus to performance testing as the means of demonstrating on a classwide basis that a design defect is present in all Ford Bronco IIs, regardless of model year, configuration, option package or modification.[43] In espousing this performance testing theory, plaintiffs' expert proposes the use of a very specific type of test at a specific speed under specific conditions, a test that admittedly does not take into consideration numerous factors that might affect the vehicle's propensity to roll over.[44] Moreover, there is no data that possibly can purport to have tested every configuration, and to even suggest implementation of such a process alone belies the concept of "classwide," as opposed to individualized, proof. I therefore find this proposed method of common proof unsatisfactory.

Yet another problem created by plaintiffs' reliance on performance testing data is the fact that a review of accident statistics for various model years of Bronco IIs and peer utility vehicles suggests that performance by Bronco IIs for a range of model years is comparable to that of its peers.[45] Additionally, the statistics reveal that differences exist in Bronco II accident incidences across various model years and across regions of the country.[46] If plaintiffs propose to condemn Bronco IIs but not other sport utility vehicles, and if plaintiffs propose to condemn all Bronco IIs as a class, they must at least identify some defect reasonably common **only** to the Ford Bronco II and common to **all** Ford Bronco IIs at issue.[47] This plaintiffs have not done. Indeed, plaintiffs' expert, Mr. Medcalf, has been very candid in his report and testimony, and rather than attempting to identify a specific, classwide defect, his primary focus has been on recommending a classwide **remedy**. I find that this simply does not equate with credible classwide proof of a common **defect** for purposes of class certification.

■ Plaintiffs also point to Ford's misrepresentations concerning the defect and plaintiffs' reliance on them as common fact issues. However, even assuming that plaintiffs could advance credible classwide proof of a design defect common to all Bronco II vehicles and a common misrepresentation received by the entire class, they would encounter the highly individualized fact issue of whether the class members *relied* on Ford's

---

**40.** *Id.* at p. 15. Plaintiffs' expert, William Medcalf, states in his deposition testimony that suspension issues are relevant to the stability of the Bronco II, but admits that he has done no calculations based on the geometry of the vehicle's suspension. Defendant's Appendix of Exhibits, Exhibit 1, at pp. 17–18.

**41.** For example, exceeding the 100 pound cargo limit on the vehicle's roof.

**42.** Report of Lee Carr, Defendant's Appendix of Expert Reports, Exhibit A; Affidavit of Seymour Lenovitz, Defendant's Appendix of Exhibits, Exhibit 3.

**43.** Plaintiffs' expert concedes in his deposition that the stability index alone is simply a starting point for assessing the stability of a vehicle, and opines that "one of the second items you have to look at is how does the vehicle perform under reasonably foreseeable driving maneuvers?" Deposition of William Medcalf, Defendant's Appendix of Exhibits, Exhibit 1 at pp. 27–28.

**44.** *Id.* at pp. 42–43; Affidavit of William Medcalf, Exhibit 2 to Plaintiff's Reply to Defendant's Opposition to Motion for Class Certification, at ¶ 5.

**45.** *See* Report of William Wecker, Defendant's Appendix of Expert Reports, Exhibit B.

**46.** *Id.*

**47.** *See Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1018 (D.C.Cir.1986) (in suit against auto manufacturer seeking monetary compensation for cost of repairing allegedly defective automatic transmissions, class certification not proper where factual disputes over four engine systems consisting of component configurations employed in at least 17 different models of automobiles over five years threatened to overwhelm court, even before application of different state laws of implied warranty).

alleged misrepresentation(s) concerning the defect.[48] The advisory committee comments to Rule 23(b)(3) specifically note that certification under that section "may be unsuitable in fraud cases where there are variations in the kinds or degrees of reliance by the persons to whom the alleged misrepresentations were addressed."[49] The Fifth Circuit has embraced this restriction repeatedly with respect to common law fraud claims.[50] Plaintiffs do not attempt to demonstrate similarity in the kinds or degrees of reliance by the putative class members, other than to argue that they are entitled to a presumption of class reliance. Defendant, on the other hand, has submitted the discovery responses of numerous named plaintiffs that reveal variations in the information received by the plaintiffs (if received at all), as well as variations in the extent to which they relied on that information in purchasing their vehicle.[51]

■ Plaintiffs argue that individualized inquiry on the reliance issue can be avoided by use of a classwide presumption of reliance. The cases on which plaintiffs rely in invoking this presumption are federal securities fraud cases in which courts have recognized the availability of the presumption. I consider these cases inapposite. These consolidated cases involve state law fraud claims, not federal securities fraud claims. As defendant points out, many state courts have specifically refused to apply such a presumption in fraud and misrepresentation cases.[52] As one court has noted, the theory of presumptive reliance "has generally been limited to the securities market where the courts can presume 'a nearly perfect market in information.'" *Maguire v. Sandy Mac., Inc.*, 138 F.R.D. 444, 451 (D.N.J.1991). I recognized

the same restriction in another multidistrict action previously before me. *In re Taxable Municipal Bonds Litig.*, MDL 863, 1992 U.S.Dist. LEXIS 11780, at *3–4 (E.D.La. July 27, 1992). Thus, under plaintiffs' common law fraud/misrepresentation theory, each class member would have to demonstrate his individual reliance upon the alleged misrepresentations, causing individual, not common, fact issues to predominate.

■ Yet another issue on which plaintiffs proclaim to have common proof is the alleged impact of Ford's conduct on the class, i.e. that "common proof adequately demonstrates some damage to each individual."[53] Plaintiffs have alleged economic injury based on their payment of "inflated prices for their Bronco IIs—i.e., prices which did not reflect that the vehicle suffered from an unreasonably dangerous defect" and one method they have proposed for determining such classwide injury is a survey of class members themselves, which to date has not been conducted.[54] According to plaintiff's economic expert Melville Wolfson, such a survey will provide a basis for determining a single figure that represents an average of the amount by which Bronco II owners think their vehicles have diminished in value. Plaintiffs cite no authority for such a method of measuring damages, and I consider it speculative at best and biased at worst. I also note that, disturbingly, a recent public statement made by one of plaintiffs' counsel in related Alabama state court litigation "[plaintiff counsels'] survey of the market shows that Bronco II resale values are about the same as other sport-utility vehicles" and "[t]he value hasn't really gone down because they roll over."[55]

---

**48.** Reliance is a requirement not only of fraud and misrepresentation causes of action, but also of breach of warranty claims in some states and an element of consumer protection statutes in others. *See Castano*, 84 F.3d at 745 n. 20.

**49.** Rule 23 comment to Subdivision (b)(3).

**50.** *Castano*, 84 F.3d at 745 (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir.1973)).

**51.** *See* Defendant's Appendix of Exhibits, Exhibits 7–30.

**52.** *See* Defendant's Appendix of State Laws at pp. 22–23.

**53.** Plaintiffs' Memorandum in Support of Class Certification, at pp. 19–20.

**54.** Report of Melville Wolfson, Plaintiffs' Supplement to Motion for Class Certification.

**55.** Milo Geyelin, *Ford Reaches a New Settlement in Bronco II Rollover Litigation*, Wall St. J., January 30, 1997, at B12. Although Alabama plaintiffs are carved out of the class sought to be certified in these consolidated cases, Alabama counsel have attempted to participate with counsel in the consolidated matters in reaching a settlement with defendant.

■ Almost foreseeing the doom of their diminished value theory, plaintiffs more recently have focused on cost to cure as a measure of damages that *can* be implemented on a classwide basis.[56] Plaintiffs cite several cases in which courts from several jurisdictions have recognized cost to cure as a measure of damages in cases involving an alleged breach of warranty.[57] Plaintiffs also correctly point out that the individualized nature of damages alone does not defeat a finding of predominance of common issues. However, even assuming the cost of cure remedy is available under the law, the issue of the appropriate "cure" is inextricably tied to the issue of defect, an issue that involves a myriad of individualized factual inquiries.

Overall then, I find it impossible to say that common issues of fact represent the lion's share of the issues in this litigation.

## C. Superiority

Rule 23 (b)(3) requires that the court find not only that common issues of law or fact predominate, but that a class action is superior to other methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3). In making this determination, various competing concerns must be addressed. *Castano*, 84 F.3d at 746–751.

■ Plaintiffs argue that the class action is not only the best, but the only means for securing relief for Bronco II owners. According to plaintiffs, because their individual economic loss claims are for relatively little money,[58] the cost of pursuing individual suits far outweighs any recovery plaintiffs might hope for here. It is universally recognized that public policy justifications for the use of class actions may be compelling where

the harm to each plaintiff is too meager to pursue the remedy individually. *Castano*, 84 F.3d at 748. However, plaintiffs, in their Second Amended Complaint, seek to recover both attorney fees and punitive damages. The Magnuson–Moss Act provides for an award of attorney fees in certain circumstances,[59] and at least some of the state laws potentially applicable to class members' claims provide for fee-shifting and/or punitive damages, e.g., where there is an intentional or willful breach of contract or implied warranty. Such circumstances have been held to undermine the "negative value" argument. *Castano*, 84 F.3d at 748 (*citing Boggs v. Alto Trailer Sales*, 511 F.2d 114, 118 (5th Cir. 1975)) (acknowledging availability of attorney fees is common basis for finding non-superiority).

Moreover, the meager nature of individualized recovery is but one factor considered under the superiority analysis. Two other important factors that inform the analysis are the effect certification will have on the defendant (e.g., will it create undue pressure to settle?) and the effect certification will have on judicial resources (e.g., is the cause of action immature in the sense that there is no real track record of resolution of similar claims, and will it create manageability problems?).

In connection with the judicial efficiency/manageability factor, the Fifth Circuit in *Castano* noted not only that the case presented an immature tort and would benefit from some individual state court litigation, but also that the difficulty of the choice of law issue alone may justify refusal to certify the class. *Castano*, 84 F.3d at 749–50. The *Castano* court observed that the complexity of the choice of law inquiry "makes individual trials a more attractive alternative and, **ipso**

---

**56.** Plaintiffs' Reply Memorandum at p. 13 (emphasis added).

**57.** *See In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 816–817 (3d Cir.1995); *Nelson v. Logan Motor Sales, Inc.*, 179 W.Va. 539, 370 S.E.2d 734 (1988); *McGrady v. Chrysler Motors Corp.*, 46 Ill.App.3d 136, 4 Ill.Dec. 705, 360 N.E.2d 818 (1977).

**58.** Upon representation of plaintiff counsel, no plaintiff spent in excess of $30,000 for their vehicle, and the cost of the "cure" proposed by plaintiffs is estimated by plaintiffs to be approximately $800.

**59.** *See* 15 U.S.C. § 2310(d)(2).

facto, renders class treatment not superior." *Id.* at 750 (emphasis added). The manageability problems created by the choice of law issue in this case are not unlike those that gave the *Castano* court pause.[60]

Plaintiffs extoll the virtues of the class action device generally, but do not explain how it will achieve economies of time, effort and expense in this case. Because this litigation has been consolidated for pretrial proceedings, plaintiffs already have derived many of the benefits that a class action would provide. For example, it has allowed for consolidated and carefully controlled discovery and joint ruling on Rule 12 motions. Under the circumstances of this litigation, both sides benefit from such consolidated pretrial proceedings. However, due to the inherently individualized nature of the claims, a circumstance that has been highlighted by the discovery taken to date, only individualized adjudications of the merits of plaintiffs' individual claims can provide a fair and efficient process and provide the opportunity to establish a track record for an otherwise immature cause of action. I do not consider certification of a class the superior method for dealing with this litigation.

Accordingly,

IT IS ORDERED that plaintiffs' motion for class certification IS DENIED.

---

**60.** The plaintiffs in *Castano* similarly asserted nationwide claims for fraud, breach of express and implied warranty and violation of consumer protection statutes.